FRED M. SHANKLIN, Appellant, *v.* CHARLES A. BROWN and JOHN FLEMING, Composing the Firm of BROWN & FLEMING, Respondents.

*Sub-contract for the furnishing of material — when its obligation is limited to such material as may be called for under the principal contract.*

Henry O. Duerr entered into a written contract with a railroad company to furnish and place "about 100,000 cubic yards of stone for rip rapping along the Hudson Division between Albany and Spuyten Duyvil more fully described and set forth in the plans prepared for the same," etc. The contract provided minutely for the work to be done, the conditions of payment, etc., and for supplemental contracts in reference to any increased work or materials which might be required, the whole to be furnished at sixty-nine cents per cubic yard, if of the same general kind as that required in the original contract, and a different price if the same was agreed upon in writing before undertaking the extra work.

A few days later Duerr entered into a contract with the firm of Brown & Fleming, by which the latter, who were designated as the parties of the first part to the contract, undertook to perform "all the provisions of the contract by and between the New York Central and Hudson River Railroad, by their chief engineer, and H. O. Duerr, dated May the first, 1899, of which a copy is hereto attached, obligatory on the party of the second part," such party being Duerr. The contract further provided, "that the party of the second part may increase the quantities of this contract to an amount not to exceed three hundred thousand (300,000) cubic yards, provided necessary proportional time is given the party of the first part to furnish the increased amount, provided however that if said amount is increased by Railroad Company and a greater price can be obtained for the same, party of first part shall have benefit of same proportional increase."

The contract also provided: "In consideration of which party of the second part agrees to pay to party of the first part the sum of sixty cents per cubic yard for each and every cubic yard of stone furnished by the party of the first part on estimates made by the Chief Engineer of the New York Central and Hudson River Railroad in same manner and at same time as is provided for in contract by and between party of the second part and New York Central and Hudson River Railroad."

*Held*, that the clause in the contract between Duerr and Brown & Fleming, relating to the increase in the quantity of stone to be furnished to the amount of 300,000 cubic yards, was designed to avoid any question concerning a full performance of any demand made by the railroad company upon Duerr under his contract;

That the operation of this provision was limited to the contract between Duerr and the railroad company, and that when such contract was completed the contract between Duerr and Brown & Fleming also terminated, and that Duerr would thereafter have no right under his contract with Brown & Fleming to call upon them to furnish stone up to the amount of 300,000 cubic yards for some other contract which he had in the meantime entered into with the railroad company.

APPEAL by the plaintiff, Fred M. Shanklin, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 12th day of December, 1902, upon the verdict of a jury rendered by direction of the court after a trial at the Westchester Trial Term, and also from an order entered in said clerk's office on the 9th day of December, 1902, denying the plaintiff's motion for a new trial made upon the minutes.

*Philo P. Safford*, for the appellant.

*Frederick W. Park*, for the respondents.

WOODWARD, J.:

A concise statement of the facts, gathered from the rather confused presentation of this case, is sufficient to show that the learned court at Trial Term correctly disposed of it. On the 1st day of May, 1899, one Henry O. Duerr entered into a contract in writing with the New York Central and Hudson River Railroad Company, to furnish and place "about 100,000 cubic yards of stone for rip rapping along the Hudson Division between Albany and Spuyten Duyvil more fully described and set forth in the plans prepared for the same," etc. This contract provided minutely for the work

to be done, the conditions of payment, etc., and for supplemental contracts in reference to any increased work or materials which might be required, the whole to be furnished at sixty-nine cents per cubic yard, if of the same general kind as that required in the original contract, and a different price if the same was agreed upon in writing before undertaking the extra work.

On the 4th day of May, 1899, Duerr entered into a contract in writing with the defendants, by the terms of which the latter undertook to perform "all the provisions of the contract by and between the New York Central and Hudson River Railroad, by their chief engineer, and H. O. Duerr, dated May the first, 1899, of which a copy is hereto attached, obligatory on the party of the second part," such party being Duerr. This contract further provided, and here is the basis of the supposed cause of action, "that the party of the second part may increase the quantities of this contract to an amount not to exceed three hundred thousand (300,000) cubic yards, provided necessary proportional time is given the party of the first part to furnish the increased amount, provided however that if said amount is increased by Railroad Company and a greater price can be obtained for the same, party of first part shall have benefit of same proportional increase." That this provision is to be read and construed as a provision that Brown & Fleming would furnish the materials for the completion of the contract between Duerr and the railroad company up to the amount specified, so that there would be no question about a full performance of any demand made upon Duerr under his contract, is evident from the language already quoted, and it is made certain by the further provision of the contract that "In consideration of which party of the second part agrees to pay to party of the first part the sum of sixty cents per cubic yard for each and every cubic yard of stone furnished by the party of the first part on estimates made by the Chief Engineer of the New York Central and Hudson River Railroad in same manner and at same time as is provided for in contract by and between party of the second part and New York Central and Hudson River Railroad." In other words, the contract between Duerr and Brown & Fleming was that the latter would do all of the work and furnish all of the materials which Duerr had contracted to furnish to the New York Central & Hudson River railroad, which was, specifically, to

deliver about 100,000 cubic yards of stone upon the division indicated, and beyond this Brown & Fleming agreed that Duerr might call upon them to furnish materials up to the extent of 300,000 cubic yards of stone under certain conditions, all of them depending upon the action of the railroad company under its contract with Duerr, a copy of which contract was attached, and which must be understood to limit the contract between Duerr and Brown & Fleming. The railroad company, under its contract, could not have compelled Duerr to furnish stone or materials for any work outside of the Hudson division, or outside of the general work indicated in its plans and specifications, which entered into its contract with Duerr, and as the contract between Duerr and Brown & Fleming was in effect a contract on the part of the latter to carry out the contract of the former with the railroad company, it cannot be held that the provision permitting Duerr to increase the amount of materials up to 300,000 cubic yards was a general option to Duerr to demand this amount of material, but as limited to the requirements of the work, for the contract was not to pay for this amount or for any given amount, but was that Duerr would pay " sixty cents per cubic yard for each and every cubic yard of stone furnished by the party of the first part on estimates made by the Chief Engineer " of the railroad company. Obviously, when the contract between Duerr and the railroad company was completed the contract between Duerr and Brown & Fleming was at an end, and Duerr would have no right under this contract to call on Brown & Fleming to furnish materials up to 300,000 cubic yards for some other contract which he had, in the meantime, entered into. If we are right in this construction there is an end of this case as the subsequent history of the controversy will plainly show.

Duerr subsequently formed a corporation known as the Duerr Contracting Company, and assigned his contract with the railroad company to such corporation, which afterward became known as the General Crushed Stone Company, Incorporated, the plaintiff's assignor. The plaintiff's assignor afterward entered into a contract with the railroad company on the 17th day of April, 1900, for another piece of work, and Brown & Fleming furnished the materials, amounting to about 100,000 cubic yards of crushed stone under the same general terms as in their former contract. It does

not appear, however, that this was done under that contract or that the parties recognized it as being in force, and the present contention of the plaintiff is that the defendants, having accepted a contract from the railroad company to perform a third contract for seventy-five cents per cubic yard on a contract for 100,000 cubic yards, the plaintiff, as the assignee of the original contract between Duerr and Brown & Fleming, is entitled to the $9,000 profit which would have resulted if Duerr, as the president of the Duerr Contracting Company or its successor, had taken this third contract at sixty-nine cents per cubic yard and had called upon the defendants to furnish the materials at sixty cents per cubic yard, it being alleged, but not proved, that there was a conspiracy between Duerr and the defendants to prevent such a result.

We agree with the learned court at Trial Term that there was no breach of contract on the part of the defendants and the direction of a verdict was fully justified.

The judgment and order appealed from should be affirmed, with costs.

Present — Hirschberg, P. J., Bartlett, Woodward, Jenks and Hooker, JJ.

Judgment and order unanimously affirmed, with costs.